UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FLOYDALE ECKLES SR,

          Plaintiff,

    v.

PENNY KINGSTON, WASHINGTON STATE DEPARTMENT OF CORRECTIONS, MARLANEA ASPDEN,

          Defendants.

CASE NO. 3:17-CV-05492-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: January 25, 2019

    The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Floydale Eckles Sr., proceeding *pro se* and *in forma pauperis*, filed this civil rights Second Amended Complaint pursuant to 42 U.S.C. § 1983. Dkt. 18.[1] Presently pending before the Court is a Motion for Summary Judgment from Defendants Penny Kingston, Washington State Department of Corrections ("DOC"), and Marlanea Aspden. Dkt. 39.

    After reviewing the relevant record, the Court finds Plaintiff has failed to overcome Defendants' summary judgment showing that there is no genuine issue of material fact regarding

---

[1] Plaintiff initiated this action on June 27, 2017. Dkt. 1. On February 12, 2018, Plaintiff filed a Second Amended Complaint. Dkt. 18. The Court directed service of the Second Amended Complaint on February 28, 2018. Dkt. 20.

REPORT AND RECOMMENDATION - 1

his Fourth Amendment claim. The DOC may not be sued under § 1983, and Defendants Kingston and Aspden are entitled to qualified immunity. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 39) be granted and this case be closed.

## BACKGROUND

Plaintiff, an inmate at Snohomish County Corrections, alleges Defendants violated his Fourth Amendment rights when they requested his medical records for use in a report detailing his community custody violations. Dkt. 18, p. 3. Plaintiff alleges that on April 3, 2017, he visited Harrison Medical Center for medical treatment. *Id.* He was arrested the next day for violations of his community custody. *Id.* He alleges on April 5, 2017, Defendant Kingston, a DOC Community Corrections Officer, emailed Harrison Medical Center and requested a copy of Plaintiff's medical records "with the intent to use the medical record in a D.O.C. violation report."[2] *Id.* Plaintiff alleges Defendant Kingston sent the medical records to Defendant Aspden, a Community Corrections Officer, who used the information in a report on Plaintiff's community custody violations. *Id.* Plaintiff alleges that copies of his medical records were also sent to Kitsap County Jail and to DOC headquarters. *Id.* Plaintiff states he was not informed that his medical records were exchanged and that he never signed a release. *Id.* He argues Defendants' use of his medical records without his permission violates the Fourth Amendment. *Id.*

## STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

---

[2] Plaintiff states the report Defendants submitted as evidence seems to be incomplete. Dkt. 48, p. 7. Because the contents of the report are not at issue in this case, it is not necessary to address this allegation.

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**DISCUSSION**

Defendants contend they are entitled to summary judgment regarding Plaintiff's Fourth Amendment claim because (1) the DOC may not be sued under § 1983, (2) Defendants Kingston and Aspden are entitled to qualified immunity, and (3) Plaintiff signed an authorization consenting to the release of his medical information. Dkt. 39, pp. 9-18.

**I.   DOC as Defendant**

Plaintiff names the DOC as a Defendant. Dkt. 18. Section 1983 applies to the actions of "persons" acting under color of state law. The DOC, as an arm of the state of Washington, is not a "person" for purposes of a § 1983 civil rights action. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). Additionally, there is no evidence the state of Washington has waived its Eleventh Amendment immunity in federal courts. Therefore, the DOC is a state agency that cannot be sued under § 1983.

## II. Qualified Immunity

Defendants Kingston and Aspden argue they are shielded from liability under § 1983 because of qualified immunity.

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232).

A Court may address the steps of the qualified immunity analysis in whichever order it finds most expedient. *Pearson*, 555 U.S. at 236. The second step of the qualified immunity analysis provides that defendants are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996).

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). Although a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S.Ct. at 551. "[The Supreme Court] has 'repeatedly told courts — and the Ninth Circuit in particular — not to define clearly established law at a high level of generality.'" *Kisela*, 138 S.Ct. at 1152 (quoting *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1775-76 (2015)). Rather, the rule must be settled law, "which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, 589-90 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).

In this case, Plaintiff has not shown a clearly established right to privacy covering medical records under the Fourth Amendment for individuals in community custody.

First, it is unclear whether the Fourth Amendment protects informational privacy in medical records. Rather, controlling authority has discussed a constitutional right to informational privacy in medical records only under other constitutional provisions, such as the Fourteenth Amendment. *See Whalen v. Roe,* 429 U.S. 589, 604 n.32 (1977) (declining to address privacy interest in medical records under the Fourth Amendment); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (citing Fourteenth Amendment cases when discussing informational privacy right); *Yin v. California*, 95 F.3d 864, 870 (9th Cir. 1996) (noting privacy right in medical records exists under the Fifth or Fourteenth Amendments). Neither the Ninth

1 Circuit nor the U.S. Supreme Court has stated that a Fourth Amendment right to privacy in
2 medical records exists. Accordingly, existing precedent has not placed the constitutional question
3 "beyond debate." *See Kisela*, 138 S.Ct. at 1152. Thus, even assuming such a right exists under
4 the Fourth Amendment, it is not clearly established.

5     Additionally, if the Court construes Plaintiff's Second Amended Complaint as bringing a
6 privacy claim under a different constitutional provision, he still has not shown a clearly
7 established right for prisoners or for individuals in community custody.

8     A right of privacy for prisoners "is fundamentally incompatible with the close and
9 continual surveillance of inmates and their cells required to ensure institutional security and
10 internal order." *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (quoting *Hudson v.*
11 *Palmer*, 468 U.S. 517, 527 (1984)). Thus, "prisoners do not have a constitutionally protected
12 expectation of privacy in prison treatment records when the state has a legitimate penological
13 interest in access to them." *Id.* The government has significant interests in accessing prisoners'
14 medical records. "Prisons need access to prisoners' medical records to protect prison staff and
15 other prisoners from communicable diseases and violence, and to manage rehabilitative efforts."
16 *Id.* at 535.

17     In this case, Plaintiff had been arrested and was in custody at the time Defendants
18 requested his medical records. Dkt. 18, p. 3. As a prisoner, he had no constitutionally protected
19 right to medical records when the state had a legitimate penological interest in access to them.
20 *See Seaton*, 610 F.3d at 534. Plaintiff argues Defendant Kingston requested the medical records
21 "with the intent to use the medical record in a D.O.C. violation report." Dkt. 18, p. 3. Plaintiff
22 has not argued that this intent is incompatible with legitimate penological interests of ensuring
23 individuals are complying with the terms of their community custody and maintaining the safety
24

1  of prisoners and prison officials. Thus, to the extent Plaintiff's argument is based on the time
2  period he was in prison, he has not shown a clearly established right to privacy.

3  To the extent Plaintiff's argument is based on the premise that medical records created
4  before his arrest should be evaluated under a different privacy standard, he also has not shown a
5  clearly established right.

6  Individuals on parole or probation do not enjoy "the absolute liberty to which every
7  citizen is entitled, but only . . . conditional liberty properly dependent on observance of special
8  [parole or probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (citing
9  *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)); *Portillo v. U.S. Dist. Court for Dist. of Arizona*,
10 15 F.3d 819, 823 (9th Cir. 1994) ("While parolees and probationers have greater privacy
11 interests than prisoners, they do not enjoy the same degree of privacy expectations as the
12 ordinary citizen."). Additionally, the government's "interests in reducing recidivism and thereby
13 promoting reintegration and positive citizenship among probationers and parolees warrant
14 privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson
15 v. California*, 547 U.S. 843, 853 (2006).

16 Plaintiff alleges he was "a civilian in the community" when he visited the hospital. Dkt.
17 18, p. 3. However, in his Response to the Motion, Plaintiff states he was not "being monitored
18 under the . . . community custody program until his 2014 cause which did not start until 3-28-
19 17." Dkt. 48, p. 6. Given that Plaintiff was arrested six days after the date he stated his "2014
20 cause" began, it is unclear whether Plaintiff is disputing that he was in community custody when
21 he visited the hospital on April 3, 2017. In any case, Defendant Aspden presented evidence in a
22 declaration that Plaintiff was in community custody during the time period at issue. Dkt. 50.
23 Plaintiff has not presented any evidence contradicting Defendant Aspden's declaration.
24

1   Additionally, Plaintiff concedes he was arrested the day after his hospital visit "for a violation of
2   probation." Dkt. 18, p. 3. Plaintiff later pleaded guilty to a violation of community custody
3   conditions stemming from the night of his arrest. Dkt. 48, p. 6. Thus, the Court finds there is no
4   genuine dispute of material fact as to whether Plaintiff was in community custody at the time of
5   his hospital visit on April 3, 2017.[3]

6         No controlling law has stated that parolees or probationers have a constitutional privacy
7   interest in their medical records. Thus, even if such a right exists, given the lowered expectation
8   of privacy and the government's interest in surveilling parolees and probationers, Plaintiff has
9   not shown that the contours of such a right are "sufficiently clear that a reasonable official would
10  understand that what he is doing violates that right." *See Kennedy,* 439 F.3d at 1065. Plaintiff has
11  therefore not shown that individuals in community custody have a clearly established right to
12  privacy in their medical records.

13        Because no clearly established right of privacy in medical records exists for prisoners or
14  those in community custody, the Court need not address the first prong of qualified immunity,
15  i.e., whether there has been a violation of a constitutional right. *See Pearson*, 555 U.S. at 236.
16  Defendants Kingston and Aspden did not violate a clearly established right; they are therefore
17  entitled to qualified immunity. Accordingly, Plaintiff's § 1983 claim against them fails.

---

[3] Washington law defines "community custody" as "that portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence under this chapter and served in the community subject to controls placed on the offender's movement and activities by the department." Wash. Rev. Code § 9.94A.030(5). This definition does not state whether community custody is more akin to parole or probation. Although parolees have lower expectations of privacy than probationers, *Samson v. California,* 547 U.S. 843, 850 (2006), the distinction does not affect the outcome of this case. Even assuming that Plaintiff's community custody was the equivalent of probation, with its higher expectation of privacy, Plaintiff has still not shown a clearly established right of privacy in medical records for probationers.

REPORT AND RECOMMENDATION - 8

### III. Authorization for Release of Medical Information

Defendants also argue Plaintiff's privacy rights were not violated because he signed an authorization consenting to the release of his medical information. Dkt. 39, p. 11. Plaintiff argues the release is invalid because it related to a prior period of community custody and therefore could not affect his rights for the time period at issue in this case. Dkt. 48, p. 10.

Because the Court concludes the DOC may not be sued under § 1983 and Defendants Kingston and Aspden are entitled to qualified immunity, *see supra* Sections I-II, it is not necessary to address the issue of whether the release was valid. Even without the release, Defendants did not violate Plaintiff's rights when they accessed his medical records.

### CONCLUSION

The Court concludes the evidence, viewed in the light most favorable to Plaintiff, shows no genuine issue of material fact exists regarding Plaintiff's claim. As such, Plaintiff has not overcome Defendants' summary judgment showing. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 39) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on January 25, 2019, as noted in the caption.

Dated this 4th day of January, 2019.

David W. Christel
United States Magistrate Judge